IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

GRAY & SONS SOUTH FLORIDA GOLD &
SILVER EXCHANGE, INC., a Florida
Corporation,

          Plaintiff,

v.

**GRAY AND SONS HOLDINGS LLC,** a
Florida Limited Liability Corporation,
**AA DIGITAL ENT LLC**, a Florida Limited
Liability Company,
**JOHN DOE**, the registrant for the
graynsons.com domain name,
**ANDIE GRAY**, an Individual,
**ANDIE VILLAR**, an Individual, and
**ANDIE V. HAJMOUSSA**, an Individual

          Defendants.

Case No.:

## COMPLAINT

Pursuant to the applicable rules of this Court, Plaintiff, Gray & Sons South Florida Gold & Silver Exchange, Inc. (hereinafter, "Plaintiff" or "Gray & Sons"), sues Defendants Gray and Sons Holdings LLC ("GS"), AA Digital Ent LLC ("AA") Andie Villar, an individual ("AV") and Andie V. Hajmoussa ("AVH") (collectively, hereinafter "Defendants" or "GS++") for preliminary and permanent injunctive relief and damages, and alleges as follows:

## BACKGROUND

## THE PARTIES

1. Plaintiff is a Florida corporation with a principal place of business at 9595 Harding Ave., Surfside, FL 33154.

13411115-2

2. Upon information and belief, Defendant GS is a Florida limited liability company that has listed its principal office address in Sunbiz and with the Florida Division of Corporations as 95 Merrick Way, Coral Gables, FL 331324

3. Upon information and belief, Defendant AA is or was a Florida limited liability company that changed its name on September 23, 2024 to Gray and Sons Holdings LLC, and until such date listed its principal office address in Sunbiz and with the Florida Division of Corporations as 3131 NW 1st Ave., 2603, Miami FL 33137.

4. Upon information and belief, Defendant Andie Villar is an individual whose email address is andievillar1@gmail.com, whose phone number is 3053407946, and whose address, on information and belief, is 3131 NE 1ST AVE, 2603, MIAMI, FL 33137

5. Upon information and belief, Defendant Andie V. Hajmoussa is an individual who has provided the address 3131 NE 1ST AVE, 2603, MIAMI, FL 33137 as his address as the Authorized Member for GS in Sunbiz/with the Florida Division of Corporations.

6. Upon information and belief, defendants AVH and AV are the same person.

7. On information and belief, "Andie Gray" is an alias for such individual.

8. On information and belief, an individual or entity has registered the domain name *graynsons.com* but the identity of said individual is not displayed in public WHOIS databases.

**JURISDICTION AND VENUE**

9. This is a civil action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §§ 1114, 1117; false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); cybersquatting in violation of the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d); false advertising under

15 U.S.C. § 1125(a)(1)(B); and violations of Florida statutory and common law, and federal common law.

10. This Court has subject matter jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 in that it involves an action arising under the federal Lanham Act. This Court has jurisdiction over the state law claims alleged herein pursuant to 17 U.S.C. § 1332 because this Court has supplemental jurisdiction over the state law and state common law claims pursuant to 17 U.S.C. § 1367.

11. This Court has personal jurisdiction over Defendants because GS is a Florida corporation, and AV and AVH have, in 2024, been listed as authorized members of said Florida corporation, with sufficient minimum contacts with Florida, or otherwise intentionally availing itself of the Florida consumer market through the promotion and marketing of their services in the Southern District of Florida, including on printed materials distributed across South Florida, including on the Sunset Islands of Miami Beach, FL. Specifically, Defendants has purposefully availed itself to the State of Florida by conducting business within the state. This purposeful availment renders the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred here.

## FACTUAL ALLEGATIONS

13. Plaintiff has since 1980 used the mark GRAY & SONS in connection with the retail sale and appraisal and repair -- including fabrication of parts therefor -- of jewelry, watches and straps and parts thereof, flatware, serving pieces made from precious metals, eyeglasses, pens, coins, collectables and watch-winders in interstate commerce in the United States, principally from

their location in South Florida.

14. Since said first usage in 1980, Plaintiff has developed common law rights and goodwill in the mark GRAY & SONS in both plain text and logo forms, through its ongoing, continuous, uninterrupted and ongoing use of the mark GRAY & SONS for jewelry, watch bands, watch and jewelry appraisal and repair -- including fabrication of parts therefor --, wholesale sales and retail sales of jewelry, watches and straps and parts thereof, flatware, serving pieces made from precious metals, eyeglasses, pens, coins, collectables and watch-winders, and trading, purchase and consignment services regarding same.

15. On or about November 8, 1995, Plaintiff registered the domain name grayandsons.com, and has maintained that domain name registration since that date, developing common law rights and goodwill in connection therewith and therein.

16. Since said first usage in 1995, Plaintiff has developed common law rights and goodwill in the mark grayandsons and grayandsons.com, through its ongoing, continuous, uninterrupted and ongoing use of the mark GRAYANDSONS in promotional materials, marketing materials, and as a domain name that hosts a website where customers can purchase, trade, cosign and and sell jewelry, watches and straps and parts thereof, flatware, serving pieces made from precious metals, eyeglasses, pens, coins, collectables and watch-winders, as well as other products.

17. Throughout Plaintiff's provision of services to the general public, Plaintiff's clientele has included a significant number of tourists and visitors, because they are centrally located in one of the most tourism-friendly cities in the world, and thus, their marks are recognized beyond the Southern District of Florida.

18. Plaintiff has long been affiliated with local and national charities, and has been a sponsor of local AIDS walks, and fundraisers for non-profits such as Boys And Girls Club and Actors Play House.

19. Attached hereto as Exhibit A is a copy of Plaintiff's filing with the Florida Department of State Division of Corporations on March 30, 1995 which documents its use of GRAY & SONS SOUTH FLORIDA GOLD & SILVER EXCHANGE, INC.

20. Attached hereto as Exhibit B is a copy of Plaintiff's filing with the Florida Department of State Division of Corporations on April 1, 2024 which documents its use of GRAY & SONS SOUTH FLORIDA GOLD & SILVER EXCHANGE, INC.

21. Attached hereto as Exhibit C is a true and accurate copy of a printout of the WHOIS page for grayandsons.com.

22. Attached hereto as Exhibit D are true and accurate copy of a printouts of approximately 40 screenshots of historical iterations of Plaintiff's grayandsons.com website (the "Website) which document the consistent use by Plaintiff of its GRAY AND SONS mark, its GRAY & SONS mark, and its grayandsons.com domain name in Florida, around the United States and across the world.

23. Attached hereto as Exhibit E are photos of a 1995 GRAY & SONS catalog which show the addresses of Plaintiff's showrooms in Coconut Grove and Bal Harbour/Surfside, and photographs of same, as well as photographs of individuals performing watch appraisal and repair -- including fabrication of parts therefor -- services for customers.

24. Both GRAY AND SONS and GRAY & SONS are famous, at least within the state of Florida, in part because Plaintiff is acknowledged as having one of the best multilayered platform for buying, selling and appraisal and repair -- including fabrication of parts therefor -- ing luxury

pre-owned timepieces and estate jewelry – uniquely fueled by the internet, their world-famous monthly catalog, and a sales and appraisal and repair -- including fabrication of parts therefor -- showroom across from Bal Harbour Shops in the Southern District of Florida.

25. Plaintiff has one of the largest collections of used and restored fine watches: both vintage and modern Swiss watches, including 150-year-old pocket watches and everything from art deco era watch to the latest models coming out of Switzerland.

26. Plaintiff also has an unequaled collection of estate and modern fine jewelry, including jewelry from the finest designers, including Tiffany, Cartier, Bvlgari, David Yurman and more. The company also specializes in diamonds, with an in-house diamond cutter/polisher, and a growing sterling silver flatware and tea set selection.

27. Plaintiff has long been the subject of media coverage in national publications such as FORTUNE Magazine. In 2019, a review online noted that Plaintiff was the first business that said individual "bought a watch from sight unseen based on their well-deserved reputation for honesty, knowledge and quality with fair prices." Attached hereto as Exhibit F is a true and accurate copy of a printout of said review.

28. On information and belief, on or about July 16, 2020, AA filed Articles of Organization for AA Digital Ent LLC, as a Florida Limited Liability Company with the Florida Division of Corporations, where the name and address of the person authorized to manage such entity was "Andie V. Hamousa" and the electronic signature was "Andie Villar". A true and accurate copy of that filing is attached hereto as Exhibit G.

29. On information and belief, on or about September 23, 2024, Andie Hajmoussa was the signator of a document filed with the Florida Division of Corporations that had an effective date of September 9, 2024, in which AA Digital Ent LLC amended its name to Gray and Sons Holdings

LLC, and updated its principal address. A true and accurate copy of that filing is attached hereto as Exhibit H.

30. On information and belief, on August 31, 2024, the domain name graynsons.com was registered through the GoDaddy registrar by an entity that is anonymous. The WHOIS record for said domain name was reviewed on November 22, 2024, and a true and accurate copy of said registration information is attached hereto as Exhibit I.

31. On information and belief, personal information contained in registration data is no longer displayed in our public WHOIS records, including those maintained by GoDaddy.

32. On information and belief, on or about September 25, 2024 Defendants created a Facebook page for "Gray and Sons Construction" at https://www.facebook.com/profile.php?id=61566101740497 . A true and accurate printout of the About page for such Facebook page is attached hereto as Exhibit J.

33. On or about November 15, 2024, Counsel for Plaintiff sent a cease and desist letter to Defendant "Andie Gray" using an email address provided on Defendants' website, and to the address provided in Defendants' filing with the Division of Corporations. A true and accurate copy of the letter is attached hereto as Exhibit K. No cessation of infringement by Defendants followed.

34. In view of the facts set forth above, any ongoing use of GRAYNSONS, GRAY AND SONS and GRAYANDSONS by Defendants is likely to create confusion, mistake and deceive the trade and public into believing that Registrant's services originate with or are otherwise licensed, sponsored or authorized by Plaintiff, were created in collaboration with Plaintiff, or are the same as Plaintiff's services and goods.

35. The use of the marks GRAYNSONS, GRAY AND SONS and GRAYANDSONS, as well as the graynsons.com domain name (the "Infringing Domain Name") by Defendants is likely

to damage the distinctiveness, goodwill, reputation and secondary meaning created and established within Plaintiff's well-respected, well-regarded, long-used and famous GRAY & SONS and GRAYANDSONS marks (the "Plaintiff's Marks" or "GRAY AND SONS Marks"), by virtue of the confusion, mistake and deception likely to occur between the respective marks in derogation of Plaintiff's rights and goodwill, and constitute cybersquatting.

36. By reasons of all the foregoing, Plaintiff will be gravely damaged by Registrant's ongoing usage of the infringing marks GRAYNSONS, GRAY AND SONS and GRAYANDSONS, and of the Infringing Domain Name, in violation of federal and state laws.

37. On information and belief, on its Facebook page, Defendants claim that their company is "a trusted construction and remodeling company specializing in delivering high-quality residential and commercial projects" that has a "commitment to craftsmanship and customer satisfaction" and brings "years of experience to every job."

38. On information and belief, the claims set forth in Paragraph 33 are false and fraudulent.

39. On information and belief, Defendants have engaged in copyright infringement of third party images on their website including at the page in https://www.graynsons.com/2024-lookbook that purports to showcase a "Palm Beach Bathroom". A true and accurate copy of a portion of Defendants' Lookbook is attached hereto as Exhibit L.

40. On information and belief, the true source of the image described in Paragraph 38 herein is Brantley Photography, and the interior design of said bathroom was Ellen Kavanaugh and Madison Way of Ellen Kavanaugh Interiors. A true and accurate copy of a page from LuxeSource.com that shows said bathroom is attached hereto as Exhibit M.

41. On information and belief, Defendants have also engaged in copyright infringement of third party images on their Facebook page including at https://www.facebook.com/photo/?fbid=122117039606536724&set=pb.61566101740497.-2207520000. A true and accurate copy of a portion of Defendants' Lookbook is attached hereto as Exhibit N.

42. On information and belief, the source of the image described in Paragraph 40 herein is a Maryland company that sells pergolas, whose website is at https://struxureoutdoor.com/baltimore/pergola-x. . A true and accurate copy of such website page is attached hereto as Exhibit O.

43. On information and belief, Defendants' outgoing voicemail message says as follows: Thanks for calling Gray and Sons Florida's most trusted construction and remodeling experts with over 30 years of experience and hundreds of successful projects.

44. On information and belief, Defendants are not Florida's most trusted construction or remodeling experts.

45. On information and belief, none of the entities that comprise Defendants individually have over thirty years of experience in anything.

46. On information and belief, none of the entities that comprise Defendants have, individually or collectively, completed hundreds of successful projects in construction and/or remodeling.

47. On information and belief, Defendants have distributed, or caused to be distributed, printed flyers to members of the general public, including residents of Sunset Islands, Miami Beach, Florida; a true and accurate copy the front and back of such a flyer, which was distributed in November, 2024, is attached hereto as Exhibit P.

48. In view of the facts set forth above, Defendants have engaged in trademark infringement, false advertising and unfair competition under common law, as well as federal and state laws, and violated specific Florida statutes involving fraud.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT – 15 U.S.C. § 1125(a)

49. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48.

50. Plaintiff is the exclusive owner of Plaintiff's Marks.

51. Plaintiff's Marks are distinctive, and have become well-known and famous within the industry and trade. This is a result of both the distinctiveness of each of Plaintiff's Marks, and the extensive advertising and promotion, and the consistent and considerable sales and revenue to Plaintiff from the performance of its services throughout the United States and internationally of services performed under Plaintiff's Marks, and goods sold bearing Plaintiff's Marks, before Defendants' first infringing uses in August and September of 2024.

52. Plaintiff has also been injured and damaged by Defendants' use of GRAYNSONS.com, GRAY & SONS and GRAY AND SONS, because said usages are likely to be confused with Plaintiff's Marks as used by Plaintiff on and for its services and goods.

53. Defendants' aforementioned acts have injured Gray & Sons and damaged it in an amount to be determined at trial.

54. By their actions, Defendants has also irreparably injured Gray & Sons. Such irreparable injury will continue unless and until Defendants is preliminarily and permanently enjoined by the Court from further violation of Plaintiff's rights.

55. In addition, Defendants' intentional and willful conduct makes this an exceptional case entitling Gray & Sons to recover treble damages and attorneys' fees for Defendants' infringement of Plaintiff's Marks.

## SECOND CLAIM FOR RELIEF

## FALSE ADVERTISING - 15 U.S.C. § 1125(a)(1)(B)

56. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48.

57. Defendants' actions described herein, and specifically, without limitation, its unauthorized use of colorable imitations of Plaintiff's Marks, and marks that are identical to certain of Plaintiff's Marks, on Defendants' website, social media content, Lookbook and other promotional modalities, as well as Defendants' infringement of third parties' copyrights, manifest and constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

58. Based on Defendants' representations and conduct in connection with their business name, domain name and other infringements, consumers are likely to be, and likely have been, misled and deceived into believing that Defendants' infringing business originated with, are authorized by, are approved by, or are endorsed by, Plaintiff, when they are not.

59. Defendants knew or should have known that its representations and conduct were false or likely to mislead consumers and the public.

60. Defendants' acts complained of herein were willful and deliberate, and have caused damage to Plaintiff in an amount to be determined at trial, and such damages will continue to increase unless and until Defendants is preliminarily and permanently enjoined from its wrongful actions.

## THIRD CLAIM FOR RELIEF

## CYBERSQUATTING UNDER THE
## ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))

61. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48.

62. Plaintiff's GRAY AND SONS Marks are distinctive, and were distinctive before Defendants registered the Infringing Domain Name.

63. The Infringing Domain Name is confusingly similar to Plaintiff's distinctive GRAY AND SONS Marks, creating circumstances ripe for consumer confusion and deceit.

64. Defendants intentionally registered the Infringing Domain Name and uses it to divert consumers seeking Plaintiff's website to a website accessible through the Infringing Domain Name for Defendants' commercial gain by creating a significant likelihood of consumer confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' website.

65. Defendants' registration and use of the Infringing Domain Name is primarily intended to trade off the goodwill associated with Plaintiff's GRAY AND SONS Marks.

66. No Defendant has any trademark rights in the Infringing Domain Name.

67. Defendants' diversion of users from Plaintiff's website has harmed and continues to harm Plaintiff's ability to generate business and retain customers by misleading internet users attempting to navigate to Plaintiff's website.

68. Defendants' activities as described herein were conducted in bad faith.

69. Defendants knew, or should have known, about Plaintiff's trademark rights in the GRAY AND SONS Marks at the time it registered the Infringing Domain Name.

70. Moreover, Defendants refuses to cease using Plaintiff's GRAY AND SONS Marks after being put on notice of Plaintiff's rights in November, 2024.

71. Defendants' unauthorized registration and use of the Infringing Domain Name has caused, and unless and until restrained, enjoined and transferred to Plaintiff, will continue to cause irreparable injury to Plaintiff and to the goodwill associated with its Diners Club Marks.

72. Plaintiff has no adequate remedy at law.

73. Defendants' actions complained of herein have caused, and will continue to cause, irreparable injury to Plaintiff's business, substantial loss of goodwill and reputation, and pecuniary damages to Plaintiff. Such irreparable injury will continue unless and until Defendants is preliminarily and permanently enjoined from further violation of Plaintiff's rights.

## FOURTH CLAIM FOR RELIEF

**Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201-3**

74. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48.

75. Section 501.204(1) provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in… deceptive[] or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202.

76. Defendants was, at all times material to the allegations herein, engaged in and/or attempting to be engaged in "trade or commerce' as defined by the Act. Fla. Stat. § 501.203.

77. In Defendants' "Lookbook", a page of which a true and accurate copy thereof is included as Exhibit P, Defendants state that one looking through said Lookbook can "Navigate through our curated collection of remodeling projects, featuring detailed designs and innovating

solutions tailored to elevate your home. Explore each section to discovery how we transform spaces into timeless works of art."

78. On information and belief, stating that the Lookbook contains documentation of how "we transform spaces" would reasonably be read by the general public to be a claim that Defendants themselves were responsible for the locations, designs and spaces, and construction, depicted in each and every photograph in the Lookbook.

79. However, at least two of the images contained therein depict the work of third parties in which Defendants were not involved.

80. These depictions constitute copyright infringement, and also constitute deceptive and unfair acts and practices while conducting trade and/or commerce, regardless of whether any individual or entity obtained services from Defendants after viewing such Lookbook.

81. Defendants' infringements of third party copyrights in tandem with Defendant's implicit and explicit claims that they were involved in the creation of the buildings, landscaping, décor and design of the locations depicted in the images constitute objectively false and misleading statements to the general public in its advertising and promotional materials.

82. Defendants' infringements on and of the copyrights of third parties separately constitute violations of FDUTPA, as a matter of law, as such deceptive and/or unfair acts or practices constitute a violation of FDUTPA.

83. Defendants' false, inaccurate and materially incorrect outgoing voicemail in which Defendants claim to be "most trusted construction and remodeling experts with over 30 years of experience and hundreds of successful projects" is materially false and inaccurate, and separately constitutes one or more violations of FDUTPA, as a matter of law, as such deceptive and/or unfair acts or practices constitute a violation of FDUTPA.

84. Plaintiff seeks declaratory relief, preliminary and permanent injunctive relief prohibiting Defendants from continuing to disseminate its false and misleading content on packaging, labels, products and marketing materials, as well as actual damages plus attorney's fees and court costs, and other relief allowable under FDUTPA.

## FIFTH CLAIM FOR RELIEF

## COMMON LAW TRADEMARK INFRINGEMENT

85. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48.

86. Plaintiff owns all right, title and interest in and to Plaintiff's Marks as alleged herein, including all common law rights in such marks.

87. Defendants' acts complained of herein constitute trademark infringement in violation of the common law of the State of Florida.

88. Defendants intends to continue its willfully infringing acts unless restrained by this Court.

89. Defendants' conduct has injured Plaintiff and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law. In addition, Defendants has engaged in oppression and fraud on the consuming public. Accordingly, Plaintiff is entitled to a preliminary and permanent injunction, and punitive and/or exemplary damages pursuant to Florida common law.

## SIXTH CLAIM FOR RELIEF

## FLORIDA STATUTORY FALSE ADVERTISING IN VIOLATION OF FLORIDA STATUTE §817.41

90. Plaintiff repeats, realleges and incorporates herein by reference every allegation contained in paragraphs 1 through 48 and 70-78.

91. Defendants' acts complained of herein constitute unfair competition and false advertising in violation of Florida Statute §817.41, *et seq*.

92. Based on Defendants' infringement of Plaintiff's Marks in connection with Defendants' business, products and services, consumers are likely to be, and may have been, misled and deceived into believing that Defendants' business, products and actions are associated with or sponsored by, or otherwise approved or licensed by, Plaintiff, when in fact they are not.

93. Defendants knew or should have known that their branding choices were likely to mislead consumers and the public.

94. Defendants has made false statements about certain of its products, including statements contained in its Lookbook.

95. Defendants' use of deceptive, false, and/or misleading marketing and promotional materials constitutes an unfair or deceptive trade practice within the meaning of Florida Statute §817.41, *et seq*.

96. Defendants' acts of false advertising have caused and will continue to cause irreparable injury, loss of reputation, and pecuniary damages. Such irreparable injury will continue unless and until Defendants is preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights.

**PRAYER FOR RELIEF**

WHEREFORE, Gray & Sons prays for judgement against Defendants as follows:

A. For a preliminary and permanent injunction prohibiting Defendants from doing business as GRAY AND SONS or GRAY & SONS, or any visual or phonetically similar mark,

and prohibiting Defendants and its agents, servants, owners, shareholders, partners, employees, attorneys, assigns, and all others in privity or acting in concert with them from committing further acts of infringement including but not limited to:

    a.    Using any title, name, service mark, trademark, trade name, social media username or account name, or domain name that includes the formative "GRAY" or any phonetic or visual equivalent thereto including but not limited to "GREY", or which is otherwise confusingly similar to any of Plaintiff's Marks ;

    b.    Using the domain name *graynsons.com* or any phonetic or visual equivalent thereto; or

    c.    Otherwise infringing or diluting Plaintiff's trademarks, service marks, trade names, or trade dress, unfairly competing with Plaintiff, or otherwise injuring Plaintiff's business reputation in any manner.

B.    For a preliminary and permanent injunction prohibiting Defendants from engaging in false advertising;

C.    For an order that Defendants be directed to deliver up for destruction all promotional merchandise, images, advertisements, signs, packages, publications, websites, social networking or media pages or accounts, domain names, and all other material in its possession or under their control that bear any infringing marks

D.    That the Court award Gray & Sons compensatory damages in an amount according to proof, and award Gray & Sons exemplary and/or punitive damages and, if appropriate, attorney's fees, to the extent permitted by law.

E.    That the Court award actual damages for trademark infringement under federal and Florida law.

  F. For an order that Defendants account to and pay over to Gray & Sons all revenues in excess of costs derived from its infringements of Plaintiff's GRAY AND SONS Marks

  G. For costs of suit, attorneys' fees, prejudgment interest and such other and further relief as the Court deems just and proper.

Dated: November 25, 2024        Respectfully submitted,

                 BERGER SINGERMAN LLP
                 1450 Brickell Avenue, Suite 1900
                 Miami, Florida 33131
                 Main: (305) 755-9500
                 Facsimile: (305) 714-4340

                 By: *s/ Heidi H. Tandy*
                 Heidi H. Tandy, Esq.
                 Florida Bar No. 163864
                 htandy@bergersingerman.com
                 DRTDOCKET@bergersingerman.com

                 *Attorneys for Plaintiff Gray & Sons, LLC*

13411115-2

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing Complaint and that the facts stated in it are true.

Executed this 25th day of November, 2024.

*/s/ Keith Gray*
Keith Gray
GRAY & SONS SOUTH FLORIDA GOLD &
SILVER EXCHANGE, INC.,

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on this 25th day of November, 2024, the foregoing has been transmitted by electronic filing with the Clerk of the Court via CM/ECF which will send notice of electronic filing to all counsel of record.

By: /s/ *Heidi M. Tandy*
Heidi M. Tandy

13411115-2